IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA )
)
v. ) Case No. 3:18CR142–HEH
)
STEPHEN L. JAFFE, )
)
Defendant. )

## MEMORANDUM OPINION
(Defendant's Appeal of Magistrate Judge's Decision)

Doctor Stephen L. Jaffe ("Dr. Jaffe"), a staff neurologist at the Hunter Holmes McGuire Veteran's Administration Medical Center (the "V.A. Hospital") in Richmond, Virginia, and clinical professor of neurology at the Virginia Commonwealth University School of Medicine, was convicted in United States Magistrate Court of simple assault. Dr. Jaffe timely noted his appeal and the case is before this Court for review.

The events at issue occurred on May 3, 2018. The complainant, Serendipity Rinonos ("Dr. Rinonos"), a neurology resident at Virginia Commonwealth University School of Medicine, was assigned to the V.A. Hospital as part of her neurology rotation. The V.A. Hospital is situated in the Eastern District of Virginia and within the special territorial jurisdiction of this Court.

The incident underlying Dr. Jaffe's conviction can be succinctly described as a dispute between Dr. Jaffe, acting in his capacity as a clinical professor of neurology, and Dr. Rinonos, a neurology resident training under his supervision, as to whether Dr. Jaffe should wear gloves while administering a trigger point injection to a patient in an

examination room at the V.A. Hospital. Dr. Jaffe steadfastly declined to wear gloves contending they were both unnecessary and affected the precision of his hands. (Tr. 85–88, 102–04, ECF No. 28.) Dr. Rinonos offered to obtain better fitting gloves for Dr. Jaffe, which he refused.

As this conversation took place, the patient, Connie Rhem ("Rhem"), was lying on his back in the examination room facing away from the door. Rhem was not in a position to observe the altercation but heard Dr. Jaffe tell Dr. Rinonos not to leave the room. Rhem testified that he did not observe Dr. Jaffe make physical contact with Dr. Rinonos. (*Id.* at 54–57.)

Linda Beatty, a licensed practical nurse ("Nurse Beatty"), was situated across the room preparing syringes for the procedure. (*Id.* at 19–23.) Nurse Beatty was in the examination room during the debate which culminated in Dr. Rinonos walking toward the door to exit the room after inquiring about Dr. Jaffe's glove size. As she moved toward the door, Dr. Jaffe, after saying "Don't go," grabbed Dr. Rinonos by her shoulders with both hands. (*Id.* at 90–91.) Dr. Rinonos placed her hands on Dr. Jaffe's upper arms to prevent him from advancing further. (*Id.*) These events were witnessed by Nurse Beatty who testified that she saw Dr. Jaffe "turn around towards" Dr. Rinonos and put "his hands on top of her shoulders." (*Id.* at 31–32.) The magistrate judge then asked Nurse Beatty, "[a]s if to restrain her movement?" Nurse Beatty replied, "Yes." (*Id.* at 32.) She further testified that she witnessed Dr. Rinonos struggle for five to ten seconds while Dr. Jaffe held her shoulders and said "No, don't go. We have to do this procedure." (*Id.*) Dr. Rinonos then left the room and proceeded to the office of the Chief

2

of the V.A. Hospital's Neurology Department. Nurse Beatty and Dr. Jaffe completed the procedure and continued their rounds.

Later that day, Dr. Rinonos met with Officer Albert Harris ("Officer Harris"), an investigator with the V.A. Hospital. Officer Harris testified that Dr. Rinonos described Dr. Jaffe's contact with her as a bear hug and that she did not sustain any injuries. (*Id.* at 144–45.) Dr. Rinonos, however, denied describing her contact with Dr. Jaffe as a bear hug. (*Id.* at 111.) She also conceded during her testimony that Dr. Jaffe could lose his hospital privileges and would have no further contact with patients if convicted. (*Id.* at 113, 206.)

In his testimony, Dr. Jaffe concedes that he and Dr. Rinonos debated the necessity for wearing gloves to administer the trigger point injection procedure. He testified that Dr. Rinonos approached him and confronted him "face-to-face," causing him to instinctively raise his hands "to the sides of her upper arms," in an attempt to "stabilize" the situation. (*Id.* at 182.) Dr. Jaffe characterized his contact with Dr. Rinonos as "minimal." (*Id.* at 182–85.)

After hearing the evidence and argument of counsel, the United States Magistrate Judge found the testimony of Nurse Beatty, Rhem, and Dr. Rinonos to be persuasively credible. He described Dr. Jaffe's testimony as "self-serving and directly in conflict of other witnesses." (*Id.* at 208.) Therefore, the Court found Dr. Jaffe guilty of simple assault. (*Id.*)

In seeking appellate review by the district court, Dr. Jaffe contends that the evidence adduced by the government was insufficient to support a finding of guilty of

3

simple assault. As the Magistrate Judge articulated, this case distills to one of credibility of witnesses. Dr. Jaffe argues that

> Not only was there no evidence of the requisite intent on Dr. Jaffe's part, the Magistrate Judge erred as a matter of law when it found that because "he intentionally touch[ed] her to restrain her movement," Dr. Jaffe is guilty of simple assault. . . . This simply is not the law. . . . [T]he prosecution must establish the intent of the actor and that intent is one with a criminal element – the touching must be patently offensive and the actor has to intend for it to be.

(Def.'s Br. Supp. Appeal 12, ECF No. 30.)

In its opposition brief, the United States reminds the Court that appellate review is both informed and constrained by the record at hand.[1] Furthermore, as the United States Court of Appeals for the Fourth Circuit restated in *United States v. Landersman*, "[w]e review judgments resulting from a bench trial under a mixed standard of review: factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." 886 F.3d 393, 406 (4th Cir. 2018) (quoting *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016)). The Court in *Landersman* further noted

> In assessing the sufficiency of the evidence presented in a bench trial, we must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict. "Substantial evidence" means evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.

*Id.* (quoting *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009)).

---

[1] The scope of appeal from a magistrate judge's judgment is "the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). *See also United States v. Bursey*, 416 F.3d 301, 305–06 (4th Cir. 2005).

Dr. Jaffe maintains that his physical contact with Dr. Rinonos should be evaluated under the law of the Commonwealth of Virginia. Dr. Jaffe relies on *Parish v. Commonwealth*, 693 S.E.2d 315 (Va. Ct. App. 2010), to support his contention that simple assault requires an intentional offensive touching. Drawing from the teachings of *Parish*, Dr. Jaffe argues that "[i]mportantly, the question of whether a touching is a battery, and therefore a simple assault under 18 U.S.C. § 113, 'depends on the intent of the actor, not on the force applied.'" (Def.'s Br. Supp. Appeal 8 (citing *Parish*, 693 S.E.2d at 319).) Section 113(a)(5) requires an intentional offensive touching.

As the Fourth Circuit noted in *United States v. Passaro*, "courts have uniformly recognized that various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term." 577 F.3d 207, 217–18 (4th Cir. 2009). The Fifth Circuit opinion in *United States v. Delis* is also instructive. 558 F.3d 177 (2d Cir. 2009). "Section 113(a)(5) criminalizes 'simple assault,' a term grounded in common law. Where, as here, a statute incorporates language with an accepted common-law definition, our construction of the statute is guided by that accepted meaning absent a clear contrary indication." *Id.* at 180 (citing *United States v. Shabani*, 513 U.S. 10, 13 (1994)).

After a detailed explanation of the evolution of Section 113(a)(5), the Fifth Circuit concluded that

> completed common-law battery, including offensive touching, falls within the definition of the term "simple assault" as used in 18 U.S.C. §113(a)(5). As common-law battery did not require specific intent to injure, we further conclude that conviction under § 113(a)(5) for conduct constituting

5

> common-law battery does not require any finding of specific intent to injure.

*Delis*, 558 F.3d at 184. The United States Supreme Court in *United States v. Castleman* provided further context in concluding that at common law, "the element of force in the crime of battery was 'satisfied by even the slightest offensive touching.'" 572 U.S. 157, 163 (2014) (quoting *Johnson v. United States*, 559 U.S. 133, 139 (2010)).

The Magistrate Judge in this case, while acknowledging a paucity of law explaining and applying the definition of simple assault, essentially adopted the definition requested by Dr. Jaffe stating, "I've already set forth what I believe to be the legal standard. That standard is that the government has to prove beyond a reasonable doubt that the defendant intentionally touched Dr. Rinonos in an offensive manner." (Tr. 207–08.) The judge further noted, "I believe that when somebody intentionally touches somebody to restrain them from their free will, that constitutes a simple assault." (*Id.* at 208.)

At this juncture, the scope of review is narrow. As the Fourth Circuit explained in *United States v. Bishop*, this Court "must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." 740 F.3d 927, 935 (4th Cir. 2014) (quoting *Elliott v. United States*, 332 F.3d 753, 760–61 (4th Cir. 2003)). The Fourth Circuit further counseled in *Bishop* that appellate courts should be "mindful that, as the trier of fact, [the trial] court was in a better position than [the appellate court] to evaluate the credibility of witnesses, take into account circumstances, and make reasonable inferences. Thus [the appellate court should] reverse on sufficiency

grounds only where 'the prosecution's failure is clear.'" *Id.* (citing *Burks v. United States*, 437 U.S. 1, 17 (1978)).

The Magistrate Judge acknowledged that "we have a battle of credibility here." (Tr. 208.) In his concluding analysis, he found the government's witnesses more credible.[2] He discounted Dr. Jaffe's credibility "finding it self-serving and directly in conflict of the other witnesses." (*Id.*)

This Court therefore finds that there is substantial evidence to support the verdict of the Magistrate Judge and Dr. Jaffe's conviction will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

                                    /s/
                          Henry E. Hudson
                          Senior United States District Judge

Date: February 12, 2015
Richmond, Virginia

---

[2] In his remarks, the Magistrate Judge expressed his regret that a dispute between two well-credentialed physicians over wearing gloves to perform a medical procedure resulted in a criminal prosecution. He also expressed his opinion that the matter could have been handled better. (Tr. 213–14.) This Court agrees.

7